**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Angela Castro, | No. CV-20-00995-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Angela Castro's Applications for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 11, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply Brief (Doc. 15, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 10, "R.") and now reverses and remands the Administrative Law Judge's ("ALJ") decision (R. at 13–23).

## I.    BACKGROUND

Plaintiff filed Applications for Disability Insurance benefits and Supplemental Security Income on October 18, 2016, for a period of disability beginning on April 1, 2015. (R. at 13.) Her claims were denied initially on March 17, 2017, and upon reconsideration on June 28, 2017. (R. at 13.) Plaintiff appeared before the ALJ for a hearing regarding her

1    claim on April 10, 2019, which the ALJ denied on June 13, 2019. (R. at 13, 23.) On March

2    23, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's

3    decision as the agency's final decision. (R. at 1–3.)

4         The Court has reviewed the medical evidence in its entirety and will discuss the

5    pertinent medical evidence in addressing the issues raised by the parties. Upon considering

6    the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the

7    following severe impairments: bilateral hip degenerative joint disease, status post bilateral

8    total hip arthroplasty, and obesity. (R. at 16.)

9         Ultimately, the ALJ evaluated the medical evidence and testimony and concluded

10   that Plaintiff was not disabled from the alleged disability onset-date through the date of the

11   decision. (R. at 22.) The ALJ found that Plaintiff "does not have an impairment or

12   combination of impairments that meets or medically equals the severity of one of the listed

13   impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 18.) Next, the ALJ

14   calculated Plaintiff's residual functional capacity ("RFC"):

15            [Plaintiff] has the [RFC] to perform light work as defined in 20
              CFR 404.1567(b) and 416.967(b) except [Plaintiff] can lift and
16            carry 20 pounds occasionally, 10 pounds frequently in an
              eight-hour workday. [Plaintiff] could stand and walk for six
17            hours in an eight-hour workday, and sit for six hours in an
              eight-hour day. [Plaintiff] could occasionally climb ladders
18            and scaffolds. She could frequently stoop and kneel. She could
              occasionally crouch and crawl. [Plaintiff] must avoid
19            concentrated exposure to hazards.

20   (R. at 18.) Accordingly, the ALJ found that Plaintiff can perform past relevant work as a

21   medical assistant, patient scheduler, and office manager. (R. at 22.)

22   **II.   LEGAL STANDARD**

23        In determining whether to reverse an ALJ's decision, the district court reviews only

24   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

25   517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

26   determination only if it is not supported by substantial evidence or is based on legal error.

27   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

28   that a reasonable person might accept as adequate to support a conclusion considering the

record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.    ANAYSIS**

Plaintiff raises three main arguments for the Court's consideration. First, Plaintiff argues the ALJ erred in finding that Plaintiff's fibromyalgia and depressive disorder were nonsevere impairments. (Pl. Br. at 5–9.) Second, Plaintiff argues the ALJ did not provide germane reasons for rejecting the opinion evidence of Sanford Goldstein, PT, CDMS and Carolyn Eastin, FNP-BC (Pl. Br. at 10–15.) Finally, Plaintiff argues the ALJ did not

provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. (Pl. Br. at 15–20.)

The Court first finds that the ALJ erred in finding Plaintiff's fibromyalgia was nonsevere, but the error is harmless, and the ALJ did not err in finding Plaintiff's depressive disorder was nonsevere. The Court also finds that the ALJ did not provide germane reasons for assigning little weight to Mr. Goldstein's opinion but did provide germane reasons for assigning little weight to Ms. Eastin's opinion. Last, the Court finds the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. For the following reasons, the Court reverses and remands.

A.   **The ALJ did err by finding Plaintiff's fibromyalgia was a nonsevere impairment, but the error was harmless, and the ALJ did not err by finding Plaintiff's major depressive order was a nonsevere impairment.**

An ALJ can find that an impairment or combination of impairments is nonsevere only if it has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Only one severe impairment is required for a claimant to survive the step-two severe impairment analysis. *Id.* The ALJ must consider all a claimant's medically determinable impairments when calculating her RFC, regardless of whether they are severe. *Id.*; 20 C.F.R. § 404.1523. Consequently, an ALJ's errant failure to treat an impairment as severe is typically harmless if the claimant survives step-two and the ALJ considers all the claimant's medically severe impairments, severe or otherwise. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). An ALJ's step-two determination will be upheld when substantial evidence supports his finding that a claimant's impairment is nonsevere. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

1.   **The ALJ's finding that Plaintiff's fibromyalgia was a nonsevere impairment was not supported by substantial evidence, but the error was harmless.**

Plaintiff argues the ALJ did not provide medical evidence in the analysis to show that fibromyalgia was a nonsevere impairment. (Pl. Br. at 6.) In the ALJ's opinion, he explained that under Social Security Ruling 12-1p, fibromyalgia can be a medically determinable impairment when there is evidence showing a licensed physician conducted

a physical examination, reviewed the person's medical history, and the person was diagnosed with fibromyalgia. (R. at 16.) He went on to explain that a physician's opinion is not sufficient on its own to show a person has fibromyalgia, and that because of this, treatment notes are reviewed by the ALJ to determine if they are consistent with fibromyalgia and to see if symptoms are consistent over time. (R. at 16.) The ALJ also explained that:

> There are two sets of criteria that can establish that a person has fibromyalgia: the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. Under the 1990 ACR criteria, a claimant must have: (1) a history of widespread pain; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the signs of symptoms have been excluded. Alternatively, under the 2010 ACR criteria, a claimant must have: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or conditions, especially fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could have caused these repeated manifestations of symptoms have been excluded (SSR 12-2p). The undersigned finds [Plaintiff's] diagnosis does not meet the criteria of SSR 12-2p.

(R. at 16.) *See* SSR 12-2p, 2012 WL 3104869, *2–3. Under these criteria, the ALJ found that Plaintiff's fibromyalgia is nonsevere. (R. at 16.)

Plaintiff argues that not only did the ALJ not provide medical evidence to show fibromyalgia was a nonsevere impairment, but that her fibromyalgia diagnosis is supported by the record. (Pl. Br. at 6.) The Court agrees with Plaintiff that the ALJ provided insufficient evidence in making the determination that fibromyalgia was a nonsevere impairment. The ALJ describes two different criteria to establish a claimant has fibromyalgia but does not explain how those criteria apply to Plaintiff's medical history or symptoms. However, this error is harmless because the ALJ found Plaintiff's other ailments consisted of serious impairments and moved on with the subsequent evaluation steps. *Miner v. Berryhill*, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (unpublished) (citing *Smolen*, 80 F.3d at 1290).

### 2. The ALJ's finding that Plaintiff's depressive disorder was a nonsevere impairment was supported by substantial evidence.

Plaintiff argues the ALJ erred in finding Plaintiff's major depressive disorder was a nonsevere impairment. (Pl. Br. at 7.) The ALJ found Plaintiff's mental impairment of major depressive disorder does not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and is nonsevere. (R. at 16.) The ALJ further explained that: Plaintiff has depression and was diagnosed with major depressive disorder, but her evaluation was unremarkable except for borderline perceptual reasoning skills (R. at 16, 926–33.); Plaintiff had good insight and judgment (R. at 16–17, 818, 916); Plaintiff had normal memory and did not have memory lapses (R. at 17, 818, 879, 906); and Plaintiff was alert and oriented (R. at 17, 482, 557, 773).

The ALJ then described that he considered the four broad areas of mental functioning under the disability regulations for evaluating mental disorders and in the Listing of Impairments. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1. (R. at 17.) The first functional area is understanding, remembering, or applying information. (R. at 17.) The ALJ found that Plaintiff had no limitation in this area because Plaintiff had good insight and judgment, her memory was normal, and she did not have memory lapses. (R. at 17, 818, 879, 906, 916.) The second functional area is interacting with others. (R. at 17.) The ALJ found Plaintiff had no limitation in this area because Plaintiff makes good eye contact, she is cooperative and pleasant, and she interacts with her family members. (R. at 17, 414, 557, 596, 651, 773, 906, 909, 916, 920, 929–30.) The third functional area is concentrating, persisting, or maintain pace. (R. at 17.) The ALJ found Plaintiff had no limitation in this area because Plaintiff's concentration and attention span were normal; her fund of knowledge was normal; and her attention, concentration, and mental processing speed was in the above average range. (R. at 17, 818, 906, 909, 920, 929–30.) The fourth functional area is adapting or managing oneself. (R. at 17.) The ALJ found Plaintiff has no limitation in this area because Plaintiff has good insight and judgment; she can perform chores, cook, and shop; she can drive and care for her daughters; she can ambulate without

assistance; and she takes short walks around the neighborhood for exercise. (R. at 17, 818, 916, 927.) Ultimately, the ALJ found that because Plaintiff's medically determinable impairment did not cause more than a mild limitation in any of the functional areas, Plaintiff's depressive disorder was nonsevere under 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). (R. at 17.)

Additionally, the ALJ assigned significant weight to Dr. William Hixon's, Psy.D., opinion that Plaintiff's "neuropsychological rest results were relatively unremarkable except for borderline perceptual reasoning skills, which involve nonverbal problem solving using eye hand coordination and working quickly and efficiently with visual information." (R. at 18, 933.) The ALJ assigned great weight to this opinion because Plaintiff's insight and judgment were good, and her memory was normal. (R. at 18, 818, 916.)

Plaintiff argues that the ALJ mischaracterized Dr. Hixon's opinion because he administered several tests which revealed distress and elevated levels of anxiety and depression, and Dr. Hixon found "considerable emotional distress that is likely perceived as a crisis." (Pl. Br. at 8; R. at 931–32.) Though Dr. Hixon's opinion involves much more information than the one sentence the ALJ pulls as part of his analysis, the ALJ used other evidence to support his opinion that Plaintiff had mild limitations in the functional areas.

Next, Plaintiff argues the ALJ incorrectly relied on reports from physical examinations to dismiss the severity of Plaintiff's major depressive disorder. (Pl. Br. at 9.) As Defendant correctly points out, the regulations indicate that the ALJ should consider objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). The regulations state that "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." 20 C.F.R. § 404.1529(a). The ALJ considered the medical evidence and made reasonable findings based on his assessment.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.**    **The ALJ did not provide germane reasons for assigning little weight to Dr. Goldstein's opinion but provided germane reasons for assigning little weight to Ms. Eastin's opinion.**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

When Plaintiff filed her application for Disability Insurance benefits and Supplemental Security Income, the regulations in effect stated that only licensed physicians, licensed or certified psychologists, and certain other specialists were considered "acceptable medical sources." 20 C.F.R. § 404.1513(a). As such, Mr. Goldstein and Ms. Eastin are not considered "acceptable medical source[s]" and their opinions are considered testimony from "other source[s]." 20 C.F.R. § 404.1513(a). An ALJ is not held to the same standard in discounting an "other source" medical opinion. *See Burkett v. Saul*,

806 Fed. Appx. 509, 512 (9th Cir. 2020). An ALJ may discount "other source" opinions so long as they provide a germane reason to do so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

        **1.**     **The ALJ did not provide germane reasons for assigning little weight to Mr. Goldstein's opinion.**

The ALJ assigned little weight to Mr. Goldstein's opinion that Plaintiff could only stand or walk for up to two hours and sit for three to six hours and that Plaintiff should avoid kneeling, squatting, or climbing steps. (R. at 20, 672–85.) The ALJ specified that "these statements were used to evaluate [] [Plaintiff's] ability to work based on the standards followed by MeasurAbilities LLC. However, those standards are different from the standards the undersigned uses to evaluate disability claims. Moreover, according to Social Security Ruling 96-5p, administrative findings, such as opinions about whether an individual is disabled or unable to work, are reserved to the Commissioner." (R. at 20.)

The ALJ does not explain how the standards Mr. Goldstein uses differed from the standards used by the ALJ, nor does he even explain what those standards are. And while an opinion about whether an individual is disabled or unable to work is reserved for the Commissioner, Mr. Goldstein's opinion is an assessment of Plaintiff's medical conditions and provides opinions regarding what she is capable of doing. (R. 685.) In fact, Mr. Goldstein's opinion indicates that Plaintiff "is able to perform a wide range of jobs within the SEDENTARY occupational base with ACCOMODATIONS." (R. 685.) The Court agrees with Plaintiff that the ALJ's reasoning here is vague and inaccurate. (Pl. Br. at 12.) Further, the ALJ does not analyze Mr. Goldstein's findings or explain how Mr. Goldstein's opinion might conflict with other medical evidence in the record. As such, the Court finds that the ALJ did not provide germane reasons for rejecting Mr. Goldstein's opinion.

        **2.**     **The ALJ provided germane reasons for assigning little weight to Ms. Eastin's opinion.**

The ALJ assigned little weight to the opinion of Ms. Eastin that Plaintiff could not lift, bend, stand, or sit for long periods which she defined as longer than 30 minutes because the record did not support the limitations. (R. at 20, 671.) The ALJ opined that at the

consultative examination, Plaintiff changed positions, mounted the examination table, returned to the seated position, and dismounted the examination table with ease and unassisted. (R. at 20, 652–53.) The ALJ also opined Plaintiff ambulated without assistance. (R. at 20, 541, 906.) Similar to his finding with Mr. Goldstein, the ALJ found that the standards used by Ms. Eastin were different than those used by the ALJ and that findings regarding whether an individual is disabled or unable to work are reserved for the Commissioner. (R. at 20.)

Inconsistency with the medical evidence is a germane reason for Ms. Eastin's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Unlike the ALJ's reasoning in not giving weight to Mr. Goldstein's opinion, here, the ALJ provided examples of how Ms. Eastin's opinion conflicts with the medical testimony and explains his reasoning. Plaintiff argues that the ALJ erred by finding Plaintiff's ability to change positions, mount and dismount the exam table with ease and unassisted at the state agency consultative exam showed Ms. Eastin's opinions should be given little weight. (Pl. br. at 14.) But Plaintiff does not explain why this reasoning was incorrect.

Plaintiff also argues the ALJ erred in dismissing Ms. Eastin's opinion because Plaintiff ambulated without assistance. (Pl. Br. at 14.) Plaintiff argues she walked with a front wheel walker following her hip replacement on July 14, 2014, prior to her alleged onset date of disability. (Pl. Br. at 14–15; R. at 418, 541.) Plaintiff concedes that the second item of evidence the ALJ relied on did indicate that Plaintiff ambulated without an assistive device, but Plaintiff explains she did have a slight limp. (Pl. Br. at 15; R. at 906.) The record shows Plaintiff walked with a normal gait. (R. at 721, 725, 729, 732, 737, 741, 746, 750.) Plaintiff argues that her ability to ambulate without an assistive device does not have bearing on whether she can sustain work. (Pl. Br. at 15.) While it may be true that Plaintiff's ability to ambulate without an assistive device does not impact her ability to sustain work, an opinion regarding Plaintiff's ability to ambulate without an assistive device impacts the reliability and accuracy of Ms. Eastin's opinion. The Court finds the ALJ provided germane reasons for assigning little weight to Ms. Eastin's opinion.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.** **The ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.**

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 15–20.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen*, 80 F.3d at 1281). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 19.)

The Court finds the ALJ's reliance on Plaintiff's activities of daily living ("ADLs") for rejecting her testimony was plainly inadequate. The ADLs cited by the ALJ—performing chores, cooking, shopping, driving, caring for her daughters, ambulating without assistance and taking short walks around the neighborhood—do not self-evidently undermine Plaintiff's testimony. (*Id.* at 20.) Importantly, Plaintiff testified she is limited performing even these minimal activities. (*Id.* at 45, 49–53, 295, 335, 927.) And the ALJ

does not provide any explanation of how these ADLs undermine Plaintiff's testimony or how they are consistent with sustaining fulltime work. (*Id.* at 20.) *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.") Neither the record nor the ALJ's analysis reveals any inconsistency between Plaintiff's ADLs and her testimony. (R. at 20, 45, 49–53, 295, 335, 927.) Instead, without more detailed evidence or analysis, it appears Plaintiff's limited ADLs are perfectly consistent with her testimony. Finally, since the ALJ's reliance on the objective medical evidence as a basis for rejecting Plaintiff's testimony stands alone, it is insufficient. *See Burch*, 400 F.3d at 682. Accordingly, the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

### D.   The credit-as-true rule does not apply.

Plaintiff argues the Court should apply the credit-as-true rule and remand her case for an award of benefits. (Pl. Br. at 20–23.) *See Garrison*, 759 F.3d at 1020. The credit-as-true rule applies if each part of a three-part test is satisfied. *Id*. First, the record must have been fully developed and further administrative proceedings would serve no useful purpose. *Id*. Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions. *Id*. Finally, if the improperly discredited evidence were credited as true, then the ALJ would be required to find the claimant disabled. *Id*. Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

Here, the credit-as-true rule does not apply and dictates that Plaintiff's case should be remanded for a new disability determination. First, the record is fully developed and there is no indication that further administrative proceedings would serve any useful

purpose. Next, as discussed above, the ALJ failed to provide sufficient justification for rejecting Plaintiff's symptom testimony and the opinion of Mr. Goldstein. If Plaintiff's symptom testimony were credited-as-true, the ALJ would be required to find Plaintiff disabled. Yet, finally, the record does create serious doubt that Plaintiff is, in fact, disabled. Therefore, the appropriate remedy is to remand Plaintiff's case for a new disability determination.

**IV.    CONCLUSION**

Substantial evidence does not support the ALJ's nondisability determination. The ALJ did not provide germane reasons for assigning little weight to Mr. Goldstein's opinion and did not provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

**IT IS THEREFORE ORDERED** reversing and remanding the June 13, 2019 decision of the Administrative Law Judge (R. at 13–23), as upheld by the Appeals Council on September 18, 2019 (R.at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order.

Dated this 22nd day of March, 2021.


_____
Douglas L. Rayes
United States District Judge